**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Aurora Coup; Jonathon Coup, | ) | No. CV-11-931-PHX-LOA |
| | ) | |
| Plaintiffs, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| The Scottsdale Plaza Resort, LLC, an | ) | |
| Arizona limited liability company; Rick | ) | |
| Frinkler and Sharon Frinkler, husband and | ) | |
| wife; Dawson Employee Benefits, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This case arises on the Motion of Defendants Scottsdale Plaza Resort, LLC; Rick and Sharon Frinkler, husband and wife; and Dawson Employee Benefits, LLC ("Defendants") to Dismiss Case And/Or Stay Proceedings and Compel Arbitration. (Doc. 24) Plaintiffs Aurora and Jonathon Coup ("Plaintiffs") filed their opposition to the Motion to which Defendants replied. (Docs. 28, 29)  Upon Plaintiffs' request, the Court authorized a surreply to which Defendants responded. (Docs. 31, 32)  Defendants' Motion is ripe for ruling.

Because the briefing is adequate and oral argument would not aid the Court, the Court will deny Plaintiffs' request for oral argument. *Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999); *Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991). After review of the parties' briefing, the Court will grant Defendants' Motion, order the parties to promptly proceed to arbitration on all issues, and will stay this lawsuit for nine months or this case may be

dismissed thereafter absent a showing of good cause and the exercise of due diligence.

**I. Introduction**

Plaintiffs filed this Title VII employment discrimination action on May 10, 2011 and amended their complaint on July 14, 2011, alleging discrimination based on national origin (count one) and gender, hostile work environment (count two) and state law claims of intentional interference with contractual relations (third cause of action[1]), and assault and battery (fourth cause of action). (Docs. 1, 20) The First Amended Complaint's assault and battery allegation claims that Defendant Rick Finkler, was "employed as a manager and employee of the Scottsdale Plaza Resort Defendants and was acting in his capacity of manager and employee of the Scottsdale Plaza Resort Defendants[.]" (Doc. 20 at 7, ¶ 33) Rather than file an answer, Defendants filed the subject Motion. (Doc. 24)

**II. Jurisdiction**

Subject matter jurisdiction in Title VII cases is predicated upon a federal question, 28 U.S.C. § 1331, and supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367. All parties have expressly consented in writing to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c), Fed.R.Civ.P.  (Docs. 18, 25)  Neither party argues that an arbitrator, rather than a federal judge, should resolve their current disagreement about whether their disputes are arbitrable. Thus, this case does not implicate the reverse presumption applied by the Supreme Court in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995) (noting that where the question is " who (primarily) should decide arbitrability[,] . . . the law reverses the presumption" in favor of arbitration and establishes a presumption that said question is for judicial determination unless there is clear and unmistakable evidence to the contrary). 514 U.S. at 944-45; *Granite Rock Co. v. Int'l Bhd. of Teamsters*, ___ U.S. ___, 130 S.Ct. 2847, 2857 n. 5 (2010)).

---

[1] The First Amended Complaint refers to the two state law claims as "causes of action" rather than "counts" as the first two are labeled. (Doc. 20 at 5, 7)

### III. Background

Defendants argue that federal law and the parties' agreement to arbitrate require the parties to arbitrate Plaintiffs' claims and the Court should either dismiss or stay this lawsuit pending the completion of the arbitration. (Doc. 24 at 2)

Plaintiffs Aurora and Jonathon Coup, mother and son, were employed as banquet servers at the Scottsdale Plaza Resort (the "Resort"), a resort hotel, convention center, and restaurant catering to business travelers, in Scottsdale, Arizona, from June 2010 until their employment was terminated on December 2, 2010. Defendant Dawson Employee Benefits, LLC ("Dawson") is a professional employer organization which supplies employees and employee benefit services to the Resort. (*Id.* at 6) Dawson employed both Plaintiffs in 2010 but the parties disagree when they started with Dawson. Upon commencement of their employment with Dawson, or shortly thereafter, Plaintiffs received a copy of Dawson's Introduction Guide & Orientation Manual ("employee manual") and signed a separate document, entitled "Employee Receipt and Acknowledgment" ("Acknowledgment"). The Acknowledgments indicate that each Plaintiff received and understood the policies and rules set forth in the employee manual and agreed to arbitrate all employment-related disputes. Defendants attach a copy of the relevant employee manual to their Motion and copies of the signed Acknowledgments, both dated June 16, 2010. (Doc. 24-1, Exhibit ("Exh.") 1, 2 and 3)

The signed Acknowledgments are identical and state: "By my signature below, I certify and acknowledge the following: . . . that my employment with [Dawson] is on an at-will basis which means that the employment relationship may be terminated at ant time by either the employee or Dawson . . . with or without cause and with or without notice." (*Id.*, Exh. 2 and 3)  The Acknowledgments indicate Plaintiffs "received and read a copy of [Dawson's employee manual]." (*Id.*) "In consideration of . . . actual employment if employed, [Plaintiffs] agree that all disputes involving alleged unlawful employment discrimination, termination by breach of alleged contract or policy, or employment tort

committed by Dawson . . . shall be resolved pursuant to the Dawson [employee manual] without recourse to court, with or without jury trial." (*Id.*)

Dawson's employee manual emphasizes, in capital letters, that arbitration is required for employees' claims and disputes arising out of their employment. In relevant part, it provides:

## Grievance, Arbitration and Termination Dispute
## Resolution Policy

It is the policy of [Dawson] (herein "Employer) to provide an exclusive, final, binding, speedy, inexpensive, and impartial method for employees to bring employment claims to the attention of management without fear of reprisal and to resolve claims and disputes arising out of alleged unlawful employment discrimination, termination by breach of alleged contract or policy, violations of federal or state discrimination statutes, governmental law, regulation, ordinance, or public policy, or employment tort, not covered by worker's compensation. No employee will be harassed, intimidated, or otherwise disciplined in any way for filing a grievance or participating in the grievance process. Access to arbitration is limited to allegations of alleged unlawful employment discrimination, termination by breach of alleged contract or policy, violations of federal or state discrimination statutes, governmental law, regulation, ordinance, or public policy, or employment tort committed by employer or representative of the employer.

ALL DISPUTES INVOLVING ALLEGED UNLAWFUL EMPLOYMENT DISCRIMINATION, TERMINATION BY BREACH OF ALLEGED CONTRACT OR POLICY, OR EMPLOYMENT TORT COMMITTED BY . . . A REPRESENTATIVE OF DAWSON EMPLOYEE BENEFITS, L.L.C., INCLUDING CLAIMS OF VIOLATIONS OF FEDERAL OR STATE DISCRIMINATION STATUTES, GOVERNMENTAL LAW, REGULATION, ORDINANCE, OR PUBLIC POLICY, SHALL BE RESOLVED PURSUANT TO THIS POLICY AND THERE SHALL BE NO RECOURSE TO COURT, WITH OR WITHOUT A JURY TRIAL.

*          *          *          *          *          *

For a complete, detailed copy of the Grievance, Arbitration and Termination Dispute Resolution Policy, please contact the Human Resources Department.

(*Id.*, Exh. 1, at § 6 at p. 44) (emphasis in original). The parties have not provided the Court with any portion of the "complete, detailed copy of the Grievance, Arbitration and Termination Dispute Resolution Policy" purportedly setting forth Dawson's arbitration rules and procedures.

Relying on the Federal Arbitration Act, related case law, and the employer's

- 4 -

written arbitration policy contained primarily in two documents, Defendants argue that Plaintiffs' allegations in the First Amended Complaint "fall within the scope of the employer's arbitration policy [and the] Court must dismiss or stay these proceedings . . . and compel arbitration of all claims in the Plaintiffs' Complaint." (*Id*.) Alternatively, Defendants argue that if the Federal Arbitration Act is inapplicable to the instant case, "Arizona law also mandates that the parties arbitrate all of Plaintiffs' claims." (*Id*. citing Arizona Revised Statute ("A.R.S.") § 12-1501)

Defendants attach the affidavit of David Lunt, Vice President of Administration for Dawson to their Reply, which indicates that the Resort does not have its own employees; rather, workers at the resort, including Plaintiffs, are employees of Dawson. (Doc. 29-1, Exh. 1, ¶¶ 2, 5) He avers that Jonathon Coup and Aurora Coup were hired by Dawson as on-call employees on June 25, 2010 and June 9, 2010, respectively, and each attended an orientation meeting on June 16, 2010, where each of them completed certain paperwork and signed the Acknowledgments. (*Id*. at ¶¶ 6,7, 9-10) Mr. Lunt's testimony is corroborated by the testimony of Jarred Elias, Dawson's former Human Resources Manager who is no longer employed by Dawson, who confirms Plaintiffs attended the June 16, 2010 orientation meeting, which Mr. Elias also attended. (Doc. 29-1, Exh. 2, ¶¶ 2, 6-7) Mr. Elias' affidavit indicates that each Plaintiff received Dawson's employee manual and Dawson's staff, including Mr. Elias, "went through the [employee manual] thoroughly and explained its contents to the individuals attending the orientation meeting. [Mr. Elias] gave all the individuals the opportunity to review the contents and ask any questions. [He] specifically pointed out the drug testing, harassment, and arbitration policies in the [employee manual]." (*Id*. at ¶¶ 8-9) At the June 16, 2010 orientation meeting, each Plaintiff "had the opportunity to ask questions regarding the information contained in the [employee manual], including the arbitration provisions [and] [n]either [Plaintiff] asked any questions . . . ." (*Id*. at ¶¶ 10-11)

In response to Defendant's Motion, Plaintiffs argue the Court should deny the arbitration motion because (1) the arbitration agreements are unenforceable because no

consideration was given by Defendants for the agreements; (2) the arbitration agreements are adhesion contracts; (3) the arbitration agreements are "procedurally unconscionable" because Plaintiffs were not given an opportunity to read the employee manual or a complete copy of the arbitration procedure before Plaintiffs agreed to arbitrate their claims; and (4) the arbitration agreements are "substantively unconscionable" because: (a) the arbitration agreements are not mutual, i.e., only the employees must waive their rights to judicial remedies, (b) they do not provide any method or procedure for arbitration, and (c) they fail to provide an express allocation of arbitration expenses. (Doc. 28 at 3)

Plaintiffs attach signed affidavits to their Response. (Doc. 28-1, Exh. 1 and 2, ¶ 2) Plaintiffs' declarations are identical and state:

> [O]n June 16, 2010, [we] attended an orientation for new employees of defendants Scottsdale Plaza Resort (the "Resort"). [We were] hired prior to June 16, 2010 as [] banquet server[s]. [We] had worked a couple of events before the June 16, 2010 orientation. [The Dawson employee manual] was given [to us] at the orientation. [The Acknowledgment] that was attached to the Exhibit 1orientation manual with [our] signature[s,] dated June 16, 2010. At the orientation, the Human Resource representative Jarred Elias told us to sign the [Acknowledgment] and turn it in. We were not told to read the Employee [manual] first. We were not given any time to read the Employee [manual] before we were told to sign the [Acknowledgment]. It was not possible based on the instructions given to read the Employee [manual] before [we] signed it because we were supposed to pay attention to the orientation video that we were told to watch. As soon as the video was finished we were instructed to go on an orientation tour, which we did. [We] did not know that the document was purported to be an agreement to arbitrate and waive a jury trial on any claim [we] might have against defendants.

*Id.*

In their surreply, Plaintiffs erroneously contend that Defendants improperly "introduce[d] new factual matters and legal arguments in the reply memorandum." (Doc. 30 at 1) *E.E.O.C. v. Creative Networks, LLC and Res-Care, Inc.*, 2008 WL 5225807, * 2 (D. Ariz. December 15, 2008) (challenged exhibits did not constitute new evidence where they rebutted arguments first raised by the opposition to a motion); *Pestube Systems, Inc. v. Hometeam Pest Defense, LLC*, 2007 WL 973964, * 5 (D. Ariz. March 30, 2007) ("Although these affidavits were not disclosed in Plaintiff's opening Motion to the Court, it appears that

the affidavits are not being offered as new evidence, but rather to controvert certain statements of fact submitted by Defendant."). Nevertheless, the Court allowed Plaintiffs to file a surreply which does not provide any additional evidence, simply additional argument supporting Plaintiffs' assertions that Defendants' arbitration request should be denied.

Defendants bring the Motion pursuant to "Rules 12(b)(1) and/or 12(b)(6)," Fed.R.Civ.P., citing *DeGroff v. MascoTech Forming Technologies-Fort Wayne, Inc.*, 179 F.Supp.2d 896, 899, n. 2 (N.D.Ind. 2001) (motion to compel arbitration may be properly brought pursuant to Rule 12(b)(1) or 12(b)(6)); *Morrison v. Colorado Permanente Medical Group, P.C.*, 983 F.Supp. 937, 940 (D.Colo. 1997) (granting motion to compel arbitration pursuant to Rule 12(b)(1)). (Doc. 24 at 1, n. 1)  Plaintiffs do not address the applicable standard of review.

**IV. Standard of Review**

A motion to compel arbitration is decided according to the standard used by district courts in resolving summary judgment motions pursuant to Rule 56, Fed.R.Civ.P. *Craft v. Campbell Soup Co.*, 177 F.3d 1083, 1084 (9th Cir. 1999), *abrogated on other grounds*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Perry v. Northcentral University, Inc.*, 2011 WL 4356499, * 3 (D.Ariz. Sept. 19, 2011) (citing numerous cases that a motion to compel arbitration is resolved under the summary judgment standard of Federal Rule of Civil Procedure 56(c)); *The O.N. Equity Sales Co. v. Thiers*, 590 F.Supp.2d 1208, 1211 (D.Ariz. 2008); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co*., 636 F.2d 51, 54 n. 9 (3d Cir. 1980)). "If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc*., 925 F.2d 1136, 1141 (9th Cir. 1991) (citing with approval *Par-Knit Mills*, 636 F.2d at 54).

If there exists a genuine dispute of material fact, *i.e.*, the evidence is such that

a reasonable jury could return a verdict for the non-moving party, a jury must decide the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Substantive law determines which facts are material. *Anderson*, 477 U.S. at 248; *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. In determining whether to grant or deny summary judgment, the district court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits. Fed.R.Civ.P. 56(c).

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. If the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994).

**V. The Federal Arbitration Act**

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts involving transactions in interstate commerce. 9 U.S.C. § 1. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." *Id.* at § 2. The FAA's "provisions manifest a 'liberal federal policy favoring arbitration agreements.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed." *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA)*, 560 F.3d 935, 940 (9th Cir. 2009) (citing *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276-77 (9th Cir. 2006)) (*en banc*); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir.

1988) (citing Ninth Circuit precedent, "[t]his court held that 9 U.S.C. section 3 gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause." ). The district court also has the discretion under federal arbitration law, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006),  as well as under Arizona law, *WB, The Building Company, LLC v. El Destino*, LP, 227 Ariz. 302, 257 P.3d 1182, 1186 (Az.Ct.App. 2011), to sever an unconscionable arbitration provision and enforce the remainder of the contract.

Similar to Arizona's public policy, "[i]n enacting the FAA, Congress 'declared a national policy favoring arbitration' that was intended to reverse centuries of judicial hostility to arbitration agreements." *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 934 (9th Cir. 2011) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)); *U.S. Insulation, Inc. v. Hilro Const. Co., Inc.*, 146 Ariz. 250, 258, 705 P.2d 490, 498 (Az.Ct.App. 1985) ("[I]t is also well established that, due to the public policy favoring arbitration, arbitration clauses should be construed liberally and any doubts as to whether or not the matter in question is subject to arbitration should be resolved in favor of arbitration.") (citation omitted). Therefore, the FAA mandates that federal courts "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Samson*, 637  at 934 (quoting *Byrd*, 470 U.S. at 218, and citing 9 U.S.C. §§ 3, 4) (emphasis original)).[2]

----

[2] Neither party argues that the subject arbitration agreement is exempt from arbitration under Arizona statutory law. *See*, *North Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, 306, 93 P.3d 501, 506 (Ariz. 2004) (in a matter of first impression, the plain language of A.R.S. § 12–1517 exempts all employer and employee employment agreements from the provisions of Arizona's arbitration act." The Court noted, however, in footnote 3, that "[n]either party argued whether the arbitration clauses are enforceable as a common-law

In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute; rather, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v. Pernaier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). In construing the terms of an arbitration agreement, the district court "appl[ies] general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc*., 83 F.3d 1046, 1049 (9th Cir. 1996) (citation omitted). If the district court determines that a valid arbitration agreement encompasses the dispute, then the FAA requires the court to enforce the arbitration agreement according to its terms. *Lifescan, Inc.*, 363 F.3d at 1012. The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the FAA is phrased in mandatory terms. *Smith v. Autonation,* Inc., 2011 WL 380517, * 1 (D.Ariz. Feb. 2, 2011) (quoting *Simula, Inc. v. Autoliv, Inc*., 175 F.3d 716, 719 (9th Cir. 1999)). "While ambiguities in the language of [an] agreement should be resolved in favor of arbitration, [courts] do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *E.E.O.C. v. Waffle House*, 534 U.S. 279, 294

_____

contract term."); *Van Dusen v. Swift Transp. Co., Inc*., 2011 WL 3924831 (D.Ariz. Sept. 7, 2011) (certifying an interlocutory appeal whether order granting defendants' motion to compel arbitration and stay of action pending completion of arbitration was erroneous for refusing to resolve plaintiffs' claim of exemption from arbitration under Section 1 of the FAA and Section 12–1517 of the Arizona Arbitration Act).

Having failed to raise the applicability of A.R.S. § 12-1517, the issue has been waived. *Protect Lake Pleasant, LLC v. Connor*, 2010 WL 5638735, * 8 (D.Ariz. July 30, 2010); *Magnesystems, Inc. v. Nikken, Inc*., 933 F.Supp. 944, 949-50 (C.D.Cal. 1996).

1    (2002) (citation omitted); *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 923 (9th
2    Cir. 2011) (citation omitted)).

3              Generally, district courts apply state contract law in determining the
4    enforceabililty of an arbitration agreement that falls within the ambit of the FAA. *First*
5    *Options of Chicago, Inc.*, 514 U.S. at 944. Because Plaintiffs are Arizona residents, were
6    employed in Arizona, and the parties do not dispute that Arizona law applies, Arizona law
7    determines whether the subject arbitration agreement is valid. *Ticknor v. Choice Hotels Int'l,*
8    *Inc.*, 265 F.3d 931, 937 (9th Cir. 2001) (applying Montana law to decide whether arbitration
9    clause was valid). Denials of motions to compel arbitration are immediately appealable;
10   however, an order staying district court proceedings and compelling arbitration cannot be
11   immediately appealed as a matter of right. 9 U.S.C. § 16(a); *Cape Flattery,* 647 F.3d at 917;
12   *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 (9th Cir. 2004); *Britton v. Co-op*
13   *Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990).

14             Section 2 of the FAA declares that state law, whether of legislative or judicial
15   origin, may be applied "*[i]f* that law arose to govern issues concerning the validity,
16   revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492
17   n. 9 (1987) (emphasis in original). "A court may not, then, in assessing the rights of litigants
18   to enforce an arbitration agreement, construe that agreement in a manner different from that
19   in which it otherwise construes nonarbitration agreements under state law." *Id.* While
20   generally applicable defenses to a contract, such as, fraud, duress, or unconscionability
21   invalidate arbitration agreements, the FAA preempts state-law defenses that apply only to
22   arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.
23   *AT & T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S.Ct. 1740, 1745–47 (2011) (The
24   FAA's "[s]aving clause permits agreements to arbitrate to be invalidated by 'generally
25   applicable contract defenses.'") (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681,
26
27
28                                        - 11 -

687 (1996)).[3] Because of the liberal Arizona and federal policies favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25.

Arbitration agreements in employment contracts are plainly enforceable and are covered by the FAA. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (FAA provisions apply to arbitration agreements contained in employment contracts). Moreover, "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer*, 500 U.S. at 26.

**V. State Law Defenses**

**A. Lack of Consideration**

Plaintiffs argue that each arbitration agreement is unenforceable because no consideration was given by Defendants for each agreement. (Doc. 28 at 3, 5-7) Plaintiffs argue that the consideration recited in each Acknowledgment, *i.e.*, "In consideration of investigating and considering my employment and actual employment if employed, I agree . . .[that all employees claims will be arbitrated]," referring to a future investigation and

---

[3] In *Concepcion*, the Supreme Court explicitly found the California Supreme Court's holding in *Discover Bank v. Superior Court*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005) was inapplicable to the parties' arbitration agreement. *Discover Bank* provided that in consumer disputes, arbitration clauses in non-negotiable contracts of adhesion are unenforceable when the damages at issue are small and when the plaintiff alleges a scheme to cheat consumers of small sums of money. *Concepcion* held that while arbitration agreements may be invalidated by generally applicable contract defenses, such as, fraud, duress, or unconscionability, state-law defenses like the one provided by *Discover Bank* that apply only to arbitration or derive their meaning from the fact that an agreement to arbitrate is at issue are preempted by federal law. 131 S.Ct. at 1745–47. *Concepcion* does not preempt Arizona law on unconscionability as a defense to arbitration in this case.

- 12 -

decision whether to employ plaintiffs in the future, was illusory because plaintiffs were already employed. Plaintiffs contend that because Plaintiffs were already employed by Dawson at the time the Acknowledgments were signed, there was no consideration for the modification of their implied-in-fact employment agreement, therefore, the alleged arbitration agreement is not an enforceable contract. (Doc. 28 at 7)

Defendants argue that "[u]nder Arizona law, where the employment is on an at-will basis, either an implied promise of employment or continued employment is sufficient consideration for an employee's agreement to arbitrate, executed after the employment has commenced[,]" citing *Mattison v. Johnston*, 730 P.2d 286, 288-290 (Az.Ct.App. 1986) (finding that the implied promise of employment and continued employment were sufficient consideration for the employee's agreement to a restrictive covenant); *Penn v. Fidel*, 2011 WL 1559224, * 2 (D.Ariz. April 25, 2011) (although plaintiff was hired two weeks prior to signing an arbitration agreement, the arbitration agreement was valid and enforceable); *Equal Employment Opportunity Commission v. The Cheesecake Factory, Inc.*, 2009 WL 1259359 (D. Ariz. May 6, 2009); *Taleb v. Autonation USA Corp.*, 2006 WL 3716922, * 3-6 (D.Ariz. Nov. 13, 2006). (Doc. 29 at 2-3)

"Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *Concepcion*, 131 S.Ct. at 1752 (citation omitted). "The general rule in interpreting arbitration agreements is that courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Cape Flattery*, 647 F.3d at 920 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. at 944; *Mihlik v. Goodson*, 2009 WL 2951114, * 4 (Az.Ct.App. Sept. 15, 2009) ("[T]he enforceability of [an] agreement to arbitrate is determined by principles of general contract law.") (citation omitted).

It is a basic tenet of Arizona contract law that in order for a promise to be enforceable against the promisor, the promisee must have given some consideration for the promise. *Savoca Masonry Co., Inc. v. Homes & Son Const. Co., Inc.*, 112 Ariz. 392, 394, 542 P.2d 817, 819 (Ariz. 1975) ("[f]or an enforceable contract to exist there must be an offer, an

acceptance, *consideration*, and sufficient specification of terms so that the obligations involved can be ascertained.") (emphasis added); *City of Cottonwood v. James L. Fann Contracting, Inc*., 179 Ariz. 185, 877 P.2d 284, 289 (Az.Ct.App. 1994) (In Arizona, a "contract is void for lack of mutual consent, *consideration*, or capacity, or voidable for fraud, duress, lack of capacity, mistake, or violation of a public purpose.") (citing omitted) (emphasis added); *Castle v. Imagine Audio Video, L.L.C.*, 2011 WL 2176150, * 5 (Az.Ct.App. May 24, 2011) (citation omitted). Consideration is defined as bargained for exchange whereby the promisors (here Plaintiffs) receive some benefit or the promisee (here Dawson) suffers a detriment. *Schade v. Diethrich*, 158 Ariz. 1, 8, 760 P.2d 1050, 1057 (Ariz. 1988) ("To constitute consideration, a performance or a return promise must be bargained for.") (citing Restatement § 71(1) and *Carroll v. Lee*, 148 Ariz. 10, 712 P.2d 923 (Ariz. 1986)). "A performance or return promise is bargained for if sought or given in exchange for the promise of the other party." *Id.* (citing Restatement § 71(2)). "Monetary gain is not always required as consideration." *Id.* Thus, in order for the arbitration agreements to be enforceable, there must be a detriment to Dawson or benefit to Plaintiffs that was bargained for in exchange for Plaintiffs' promises to arbitrate their disputes.

Similarly, "consideration necessary to modify an existing contract is 'any detriment to promise[e], or benefit to promisor' that supports the new promise." *Demasse v. ITT Corp*., 194 Ariz. 500, 984 P.2d 1138 (Ariz. 1999) (citation omitted). "[L]egal consideration, like every other part of a contract, must be the result of agreement. The parties must understand and be influenced to the particular action by something of value . . . [that is] recognized by all [parties] . . . as the moving cause." *Id.* (citation and internal quotation marks omitted). "Consideration will be found when an employer and its employees have made a 'bargained for exchange to support [the employees'] . . . relinquishment of the protections they are entitled to under the existing contract." *Id.* (citation omitted). "[A]ny challenge to the adequacy of consideration is a fact question." *Hill v. Chubb Life American Ins. Co*., 182 Ariz. 158, 164, 894 P.2d 701, 707 (Ariz. 1995).

Construing the facts in the light most favorable to Plaintiffs that they were employed by Dawson before they signed the Acknowledgments to arbitrate, the Court finds that under clearly established Arizona law, "[i]n an at-will employment relationship, the employer could discharge an employee who refused to sign the [arbitration] agreement. Whether the consideration is viewed as 'forbearance to discharge' or 'continued employment', as a practical matter, the consideration is the same." *Mattison*, 730 P.2d at 289. Here, it is undisputed that Plaintiffs were at-will employees and, like *Mattison*, nothing in the record indicates that Dawson did not intend to continue the employment relationship with Plaintiffs. The Court concludes that Dawson's implied promises of Plaintiffs' continued employment were sufficient consideration for the arbitration agreements. *Id.*; *Taleb*, 2006 WL 3716922, * 5-6 (rejecting plaintiff's interpretation of *DeMasse* in support of his lack-of-consideration argument, "[t]he Arbitration Agreement duly executed by Plaintiff and Defendant is enforceable under Arizona law because there was (1) an offer communicated to the offeree, (2) acceptance of the offer by the offeree, and (3) consideration, evidenced by the fact that Taleb, an at-will employee, remained on the job after accepting the offer, though he was free to leave.") (citation omitted).

**B. Adhesion Contracts**

Next, Plaintiffs argue the arbitration agreements are not enforceable because they are adhesion contracts, citing *Wernett v. Service Phoenix, LLC*, 2009 WL 1955612 (D. Ariz. July 6, 2009) and *Broemmer v. Abortion Servs. Of Phoenix, Ltd.*, 173 Ariz. 148, 151, 840 P.2d 1013, 1016 (Ariz. 1992), and arguing the "arbitration agreement contained in [the Acknowledgments] are adhesion contracts under Arizona law because they were not negotiated, but were form agreements prepared by defendants and given to plaintiffs on a 'take it or leave it' basis." (Doc. 28 at 7-8)

Defendants do not directly address whether the Acknowledgments are adhesion contracts under Arizona law; but rather, they discuss why the Acknowledgments are not unconscionable because under Arizona law "[t]he conclusion that a contract is one

of adhesion is not, of itself, determinative of enforceability," and the district court must "conduct an independent unconscionability analysis[,]" citing *Broemmer*, 840 P.2d at 1016. (Doc. 29 at 6-7) "To determine whether [an alleged] contract of adhesion is enforceable, [courts] look to two factors: the reasonable expectations of the adhering party and whether the contract is unconscionable." *Id.*

"An adhesion contract is typically a standardized form 'offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract' . . . [t]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms." *Id.*, 173 Ariz. at 148, 840 P.2d at 1015-1016 (quoting *Wheeler v. St. Joseph Hosp.*, 63 Cal.App.3d 345, 356, 133 Cal.Rptr. 775, 783 (1976).[4] *See also, Cooper v. QC Fin. Servs., Inc.*, 503 F.Supp.2d 1266, 1276 (D.Ariz. 2007). "A contract of adhesion is fully enforceable, however, unless the contract is also unduly oppressive or unconscionable." *Brady v. Universal Technical Institute of Arizona, Inc.*, 2009 WL 5128577, * 2 (D. Ariz. Dec. 17, 2009) (citing *Broemmer*, 173 Ariz. at 151, 840 P.2d at 1016).

Because Arizona law directs that "[t]o determine whether [an alleged] contract of adhesion is enforceable, [courts must] look to two factors: the reasonable expectations of the adhering party and whether the contract is unconscionable[,]" the Court will separately discuss these two factors. *Id.* The Court will first address Plaintiffs' reasonable-expectations claim regarding their alleged waiver of a jury trial in the context of whether the arbitration clause is an adhesion contract. *Maxwell v. Fidelity Financial Services, Inc.*, 184 Ariz. 82, 87,

---

[4] *Wheeler* dealt with a California hospital's arbitration clause contained in the hospital's conditions of admission form, requiring the patient-plaintiff to either place his initials in the space provided on the form or, in the alternative, notify the hospital in writing within 30 days of his discharge of his election not to agree to arbitration. During his hospitalization, Wheeler suffered a brain stem infarction rendering him a total quadriplegic with inability to speak or otherwise communicate except with his eyes.

907 P.2d 51, 56 (Ariz. 1995) ("'[r]easonable expectations' . . . is more correctly associated with contracts of adhesion, not claims of unconscionability . . . [as] "reasonable expectations" and unconscionability are two distinct grounds for invalidating or limiting the enforcement of a contract and has stated that 'even if [the contract provisions are] consistent with the reasonable expectations of the party' they are unenforceable if they are oppressive or unconscionable.") (citations omitted). The Court will then consider separately Plaintiffs' claims of reasonable expectations, procedural unconscionability and substantive unconscionability.

## C. Plaintiffs' Reasonable Expectations

The reasonable expectations doctrine protects parties to standardized contracts against overreaching by "hold[ing] the drafter to good faith and terms which are conscionable." *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 394, 682 P.2d 388, 399 (Ariz. 1984). "This consumer-protection doctrine, 'essentially a relaxation of the rule barring parol evidence from being admitted to discern the intent of the parties to the contract,' can 'override even unambiguous contract provisions when an insured [or consumer] reasonably expected the provision to operate differently.'" *James v. Burlington Northern Santa Fe Ry. Co.*, 2007 WL 2461685, * 8 (D.Ariz. Aug. 27, 2007) (quoting *Vencor Inc. v. Nat'l States Ins. Co.*, 303 F.3d 1024, 1035 (9th Cir. 2002) (citing *Gordinier v. Aetna Cas. & Sur. Co.*, 154 Ariz. 266, 272, 742 P.2d 277, 283 (Ariz. 1987)).

In *Darner*, the Arizona Supreme Court relied upon the Restatement (Second) of Contracts § 211 (Standardized Agreements), as a guide to analyzing, among other things, contracts that contain non-negotiated terms. *Broemmer*, 173 Ariz. at 152, 840 P.2d at 1017. The comment to subsection (3), quoted with approval by the majority in *Darner*, states in part:

> Although customers typically adhere to standardized agreements and are bound by them without even appearing to know the standard terms in detail, they are *not bound to unknown terms which are beyond the range of reasonable expectation*.

*Id.* (citing *Darner,* 140 Ariz. at 391, 682 P.2d at 396) (emphasis added). Under Arizona law

in the employment context, a court must also consider whether the employer had "reason to believe that [Plaintiffs] would not have accepted the agreement if [they] had known that the agreement contained the particular [arbitration term] term." *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 247, 119 P.3d 1044, 1050 (Az.Ct.App. 2005). A reason to believe:

> may be (1) shown "by the prior negotiations," (2) "inferred from the circumstances," (3) "inferred from the fact that the term is bizarre or oppressive," (4) proved because the term "eviscerates the non-standard terms explicitly agreed to," or (5) provided if the term "eliminates the dominant purpose of the transaction."

*Id.* (citations omitted). Additionally, the doctrine of reasonable expectations "(6) 'requires drafting of provisions which can be understood if the customer does attempt to check on his rights" and consideration of "(7) any other facts relevant to the issue of what [the party] reasonably expected in this contract." *Id.* at 248, 119 P.3d at 1051; *Wernett v. Service Phoenix, LLC*, 2009 WL 1955612, * 4 (D.Ariz. July 6, 2009) (arbitration agreement that had elements of procedural unconscionability and contained several unconscionable terms was nonetheless enforceable where "there was no reason for [the employer] to believe that [plaintiff] would not have accepted the agreement if she had known of [its] particular terms").

In *Broemmer*, the Arizona Supreme Court found that the "failure to explain to plaintiff that the agreement required all potential disputes, including malpractice disputes, to be heard only by an arbitrator who was a licensed obstetrician/gynecologist requires" the court "to view the 'bargaining' process with suspicion." *Broemmer*, 173 Ariz. at 152, 840 P.2d at 1017. "It would be unreasonable to enforce such a critical term against plaintiff when [the arbitration clause] is not a negotiated term and defendant failed to explain [the arbitration clause] to [plaintiff] or call [plaintiff's] attention to it." *Id.*

Analyzing the seven *Broemmer* factors to determine whether the arbitration clause and Dawson's arbitration policy either violate Plaintiffs' reasonable expectations or create a fact question for jury resolution, the Court finds that Plaintiffs have failed to create a question of fact that arbitration of their disputes with Defendants were beyond Plaintiffs'

reasonable expectations. First, the arbitration agreement here is in the context of an employer-employee at-will relationship, not in a consumer context. Secondly, no evidence has been presented of prior negotiations between Dawson and either Plaintiff to suggest that either Plaintiff believed there would not be an arbitration clause in the Acknowledgments. The same holds true as for the next factor from what the Court can "infer. . . from the circumstances." *Harrington*, 211 Ariz. at 248, 119 P.3d at 1051.

Addressing the third factor, the language in the employee manual and the Acknowledgments' arbitration clauses is clear, plain, unequivocal and explicit, not "bizarre or oppressive" or "grossly inequitable," *id*., 211 Ariz. at 249, 119 P.3d at 1052, *i.e.*, "ALL DISPUTES INVOLVING ALLEGED UNLAWFUL EMPLOYMENT DISCRIMINATION, TERMINATION BY BREACH OF ALLEGED CONTRACT OR POLICY, OR EMPLOYMENT TORT . . . SHALL BE RESOLVED PURSUANT TO THIS POLICY [of arbitration] AND THERE SHALL BE NO RECOURSE TO COURT, WITH OR WITHOUT A JURY TRIAL." (Doc. 24-1, Exh. 1, at § 6 at p. 44) (emphasis in original). *See also*, *Harrington*, 119 P.3d at 1050-51 (citing *Darner*, 682 at 397). The words identifying Dawson's "**ARBITRATION AND TERMINATION DISPUTE RESOLUTION POLICY**" are in large, bolded capital letters, substantially larger than most of the manual's other print, which, undoubtedly, were intended to communicate to new or prospective Dawson employees Dawson's arbitration policy. (Doc. 24-1, Exh. 1, at § 6 at p. 44) (emphasis in original).

Considering the fourth and fifth factors, and much like the arbitration agreement in *Autonation*, the arbitration clauses in Dawson's employee manual and Acknowledgments do not eviscerate non-standard terms explicitly agreed to by the parties, or otherwise eliminate the dominant purpose of the transaction, that is, Plaintiffs' employment with Dawson, regardless whether it began on or before June 16, 2010. *Autonation,* 2011 WL 380517 at 2. While Plaintiffs now contend that they want to present their employment-related claims to a jury, they do not aver that had Dawson provided

Plaintiffs sufficient time at their orientation to read the employee manual and Acknowledgments, they would have voluntarily terminated their employment with Dawson.

Dawson does not dispute that the terms of the Acknowledgments were not negotiated with Plaintiffs or the Acknowledgments were on a form prepared by Dawson. While Plaintiffs contend they were "not told to read the [employee manual and Acknowledgments] first" and "were not given any time to read [them] before [they] were told to sign the [Acknowledgments[,]" doc. 28-1, Exh. 1 and 2, Plaintiffs do not dispute that each signed his or her single-page Acknowledgment. Thus, the Acknowledgments' arbitration clause is "presumptively valid and enforceable, whether or not [Plaintiffs] read [them] or appreciated [their] full effect." *Harrington*, 211 Ariz. at 247, 119 P.3d at 1050; *Darner*, 140 Ariz. at 391, 682 P.2d at 396. Plaintiffs have provided no evidence that Dawson had "reason to believe that [Dawson] would not have accepted the agreement if [Plaintiffs] had known that the agreement contained the particular [arbitration] term." *Id.*

Considering all of the reasonable expectation factors, it is clear that on this record, the reasonable-expectations doctrine does not prohibit application of the arbitration clause to Plaintiffs' claims or create a jury question on this issue.

**D. Unconscionabily**

Plaintiffs argue that the arbitration provision is unenforceable "because the [arbitration] agreement if made, is unconscionable, both procedurally and substantively." (Doc. 28 at 1)

**1. Generally**

It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable. *Doctor's Assocs.*, 517 U.S. at 686-87. Plaintiffs, however, "have a high bar to meet in demonstrating that an arbitration agreement is unconscionable." *Effio v. FedEx Ground Package*, 2009 WL 775408, * 3 (D.Ariz. March 20, 2009). In Arizona, unconscionability includes both procedural unconscionability, *i.e.*, something is wrong with the bargaining process, such as,

oppression or surprise, or substantive unconscionability, *i.e.*, the contract terms *per se* are overly harsh or generate one-sided results. *Wernett*, 2009 WL 1955612 at * 3 (quoting *Nelson v. Rice*, 198 Ariz. 563, 567, 12 P.3d 238, 242 (Az.Ct.App. 2000)). "The Supreme Court of Arizona has recognized that, while contracts may have elements of both procedural and substantive unconscionability, 'a claim of unconscionability can be established with a showing of substantive unconscionability alone[.]'" *Id.* (quoting *Maxwell*, 184 Ariz. at 90, 907 P.2d at 59). *See also*, *Southwest Pet Products, Inc. v. Koch Industries, Inc.*, 107 F.Supp.2d 1108, 1111, n. 3 (D.Ariz. 2000).

In *Maxwell*, the Arizona Supreme indicated that "[t]raditionally, equity courts recognized the defense of unconscionability in denying relief to plaintiffs who were guilty of unconscionable conduct . . . The rule as it now exists is largely substantive, working primarily as a defense both in law and in equity and applying to claims for damages as well as specific performance." 184 Ariz. at 88, 907 P.2d at 57 (citations omitted).

If after "a reasonable opportunity to present evidence; on a developed record[,]" and a plaintiff or defendant fail to create a genuine dispute of material fact, the determination of unconscionability may be made by the court as a matter of law. *Id.*, 184 Ariz. 82, 87, 907 P.2d 51, 56 (quoting A.R.S. § 47-2302(A)).[5] A trial court has "three options [under A.R.S. § 47-2302(A)] in the event it determines that a clause of a contract is unconscionable as a matter of law." *Batory v. Sears, Roebuck and Co.*, 456 F.Supp.2d 1137, 1141 (D.Ariz. 2006). The Court may: "(1) refuse to enforce the contract; (2) enforce the

---

[5] A.R.S. § 47-2302(A) provides:

A. If the court as a *matter of law* finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

A.R.S. § 47-2302(A) (emphasis added).

remainder of the contract without the unconscionable clause; or (3) limit the application of the unconscionable clause as to avoid any unconscionable result." *Id.*

### 2. Procedural Unconscionability

"Procedural unconscionability is concerned with unfair surprise; courts examine factors influencing the 'the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, [and] whether alterations in the printed terms were possible . . . .'" *Wernett*, 2009 WL 1955612 at * 3 (quoting *Maxwell*, 184 Ariz. 82, 89, 907 P.2d 51, 58) (citation omitted). In *Maxwell*, the Arizona Supreme Court left "for another day the questions involving the remedy for procedural unconscionability alone." 184 Ariz. at 90, 907 P.2d at 59.

"Mere inequality in bargaining power is not sufficient to invalidate an arbitration agreement." *Equal Employment Opportunity Com'n v. Cheesecake Factory, Inc.*, 2009 WL 1259359, * 3 (D.Ariz. May 6, 2009) (citing *Gilmer*, 500 U.S. at 33). "Moreover, an agreement may be enforceable even if the terms offered are not negotiable." *Id.* (citing *Phoenix Baptist Hosp. & Med. Ctr. v. Aiken*, 179 Ariz. 289, 293, 877 P.2d 1345, 1349 (Az.Ct.App. 1994); *Broemmer*, 173 Ariz. at 151, 840 P.2d at 1016).

Plaintiffs argue that "the arbitration agreements are procedurally unconscionable because plaintiffs were not given an opportunity to read the [employee manual] or any complete copy of the arbitration procedure, before agreeing to arbitrate their claims." (Doc. 28 at 3) Even though Dawson's evidence disputes these factual claims, a jury trial is not necessarily required on this issue. As Plaintiffs' Response concedes, the fact that "plaintiffs did not have time to read the agreement, and did not read them . . . is not dispositive[,]" quoting *Darner*, "[t]hat Plaintiff did not read all of the terms has little bearing." (*Id.* at 10) (citation omitted).

Plaintiffs Aurora and Jonathon Coup are 48 and 22 years of age, respectively, but Plaintiffs provide nothing else regarding their "education, intelligence, business acumen

and experience, relative bargaining power, . . . whether alterations in the printed terms were possible [and] whether there were alternative[s]" to signing the Acknowledgments at the orientation. *Wernett*, 2009 WL 1955612 at * 3. Moreover, Plaintiffs have presented no evidence, or reasonable inference from admissible evidence, that had either Plaintiff asked Jarred Elias, Dawson's representative at the orientation, for more time to read the single-page Acknowledgment or, perhaps, take the employee manual and Acknowledgments home to more carefully review before signing and returning them the next day, that such reasonable requests would have been denied. Plaintiffs' argument that they were required to sign the Acknowledgments at the orientation "on a 'take it or leave it' basis[]" is sheer speculation, especially in light of Mr. Elias' affidavit, conveying a cooperative attitude of giving all the new Dawson employees "the opportunity to review the contents and ask any questions[]" about the employee manual and Acknowledgment. (Doc. 29-1, Exh. 2, ¶ 9 at p. 7) *See*, *Beus Gilbert PLLC v. Pettit*, 2011 WL 1949058, * (Az.Ct.App. May 12, 2011) ("Although Pettit suggests he had no choice but to sign the agreement, he offers no evidence to support the proposition that he could not have rejected the arbitration provision . . . ."). Even if Plaintiffs had shown that the terms of the Acknowledgments were somehow grossly unfavorable to them, which they have not, their unconscionability argument would nonetheless fail because they have not made any showing of the lack of meaningful choice as necessary to establish procedural unconscionability. There is no evidence that Dawson placed the Acknowledgments before Plaintiffs on a take-it-or-leave-it basis, threatened to fire them if they refused to sign them, forced them to sign the Acknowledgments on the spot or else, or forbade them from reviewing the Acknowledgments with counsel or anyone else they saw fit.

Similarly, there is no evidence that Plaintiffs were not given a copy of Dawson's arbitration procedures even though it was available upon request of Dawson's Human Resources Department. Dawson's employee manual plainly indicates that "[f]or a complete, detailed copy of the Grievance, Arbitration and Termination Dispute Resolution

Policy, please contact the Human Resources Department." (Doc. 24-1, Exh. 1, § 6 at p. 44) There is also no evidence that Plaintiffs ever requested a copy of the arbitration procedures from Dawson's Human Resources Department at any time before or after their employment was terminated. Finally, each Plaintiff's signed Acknowledgment states at the beginning that by each "signature below, [each Plaintiff] certif[ies] and acknowledge[s]" that each Plaintiff has "received and read a copy of the [employee manual[]]" . . . and agree "that all disputes involving alleged unlawful employment discrimination . . . or employment tort . . . shall be resolved . . . [by] Dawson['s] . . . Arbitration and Termination Dispute Resolution Policy . . . ." (Doc. 24-2, Exh. 2, at p. 2)

Construing the facts in the light most favorable to Plaintiffs, as the Court must under Rule 56, Fed.R.Civ.P., Plaintiffs' admitted failure to read the employee manual and Dawson's alleged failure to give each Plaintiff enough time to read each single-page Acknowledgment do not render Dawson's arbitration policy and clause procedurally unconscionable. *Rocz v. Drexel Burnham Lambert,* Inc., 743 P.2d 971, 975 (Az.Ct.App. 1987) ("Parties cannot repudiate their written contracts by asserting that they neglected to read them or did not really mean them."). "*Darner* specifically approved the enforceability of standard form contract provisions:

> The rule which we adopt today for interpretation of standardized contracts . . . recognizes that most provisions of standardized agreements are not the result of negotiation; often, neither the customer nor salesperson are aware of the contract provisions. The rule . . . charges the customer with knowledge that the contract . . . contains a form applied to a vast number of transactions and includes terms which are unknown . . . ; *it binds the customer to such terms*.

*Id.* (quoting *Darner*, 140 Ariz. at 393-94, 682 P.2d at 398-99) (emphasis in original). Plaintiffs' after-the-fact speculation does not overcome the traditional rule of contract law that a party to a contract is assumed to have read and understood the terms of a contract he or she signs. *Flores v. ADT Sec. Services, Inc*., 2011 WL 1211769, * 3 (D.Ariz. Jan. 31, 2011) ("Ordinarily, a party to a standardized contract is bound by all the terms of the contract even those terms that were not bargained for, understood, or even read by the party

at the time of contracting[,]" citing *Darner*, 140 Ariz. at 394, 682 P.2d at 399). Plaintiffs have failed to establish a colorable claim that Dawson's policy of arbitration for employment-related disputes constitutes unfair surprise, is oppressive, or that Dawson attempted to hide its arbitration policy from Plaintiffs. Plaintiffs' procedural unconscionability claim fails.

### 3. Substantive Unconscionability

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed at the time the contract was made." *Cooper v. QC Financial Services, Inc*., 503 F.Supp.2d 1266, 1279 (D.Ariz. 2007) (citation omitted). "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.* (quoting *Maxwell*, 184 Ariz. at 89, 907 P.2d at 58) (internal quotation marks omitted).

Plaintiffs argue that the arbitration agreements are substantively uncon-scionable because the arbitration agreement: (a) is not mutual, *i.e.*, only Dawson's employees must waive their rights to judicial remedies; (b) does not provide any method or procedure of arbitration; and (c) fails to provide an express allocation of arbitration expenses." (Doc. 28 at 3)

### a. Mutual Obligation to Arbitrate Disputes

Initially, Plaintiffs argue that the arbitration agreements are substantively unconscionable because the agreements require only Dawson's employees, but not Dawson, to waive their rights to seek a judicial remedy for disputes that may arise, citing *Nagrampa v. MailCoups, Inc*., 469 F. 3d 1257 (9th Cir. 2006); *Davis v. O'Melveny & Myers*, 485 F. 3d 1066[6] (9th Cir. 2007); *Armendariz. v. Foundation Health Psychcare Services, Inc*., 24 Cal. 4th 83, 99 Cal. Rptr. 2d 745, 6 P. 3d 669, 690-694 (2000); and *Wernett*, 2009 WL 1955612

---

[6] Note: Plaintiffs' Response inadvertently omitted the page number of the *Davis* case.

at * 5.  (Doc. 28 at 11)

Conversely, Defendants argue that Plaintiffs' lack-of-mutuality argument fails because the employee manual "clearly provides for a mutually binding arbitration policy[.]" (Doc. 29 at 8-9)  Defendants point to the employee manual, which states, in pertinent part, that

> **ALL DISPUTES** INVOLVING ALLEGED UNLAWFUL EMPLOYMENT DISCRIMINATION, TERMINATION BY BREACH OF ALLEGED CONTRACT OR POLICY, OR EMPLOYMENT TORT COMMITTED BY . . . A REPRESENTATIVE OF DAWSON . . . **SHALL BE RESOLVED PURSUANT TO THIS POLICY** AND THERE SHALL BE NO RECOURSE TO COURT, WITH OR WITHOUT A JURY TRIAL.

(*Id.* at 9) (emphasis in Defendants' Reply).  Defendants raise two reasons why Plaintiffs argument should be rejected: (1)"in interpreting a similar arbitration clause," the District Judge in *Brady v. Universal Technical Institute of Arizona, Inc.*, 2009 WL 5128577, * 2 (D. Ariz. Dec. 17, 2009), "concluded that the parties were equally bound to arbitrate, because the employer had no greater right to avoid arbitration of employment claims than employee[,]" and, (2) "because the parties' contract in this case is an at-will employment contract, it is unilateral, and does not require that there be mutuality of obligation[,]" citing *Wagner v. City of Globe*, 150 Ariz. 82, 85, 722 P.2d 250, 253 (Ariz. 1986) (at-will employment contracts do not require mutuality of obligation), *overruled on other grounds*, *Demasse*, 194 Ariz. 500, 984 P.2d 1138. (Doc. 29 at 9-10) (footnote omitted).

It appears universally true that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory[]" and, therefore, is unenforceable. *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (citing, among others, *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000) (holding that where the employer retained the unfettered right to alter the arbitration agreement's existence or its scope, it is illusory and unenforceable). "Under modern contract law, however, so long as a contract is supported by sufficient consideration there is no requirement of equivalent promises or 'mutuality of obligation.'" *Booker v.*

*Robert Half Intern., Inc.*, 315 F.Supp.2d 94, 101 (D.D.C. 2004) (citing Restatement (Second) of Contracts § 79 (1981); 2 *Corbin on Contracts* § 6.1, at 197 (1995)). "Federal [circuit] courts addressing the issue recently have consistently concluded that arbitration agreements contain adequate consideration, *need not have mutuality* or equivalency of obligation, and therefore are enforceable." *Id.* (citing, *e.g.*, *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 667–68 (6th Cir. 2003) (*en banc*) (arbitration agreement supported by sufficient consideration and mutuality of obligation under Ohio law and the Restatement (Second) of Contracts) (emphasis added)); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603–04 (3rd Cir. 2002) ("when both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced"); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 180–81 (3rd Cir. 1999) (arbitration contract need not have mutuality of obligation as long as the contract is supported by consideration); *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 637 (7th Cir. 1999); *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 378 (4th Cir. 1998); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 451–53 (2nd Cir. 1995) (mutuality of obligation or remedy not required if arbitration agreement supported by consideration)). *See also*, *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (plaintiff's argument that arbitration provision is unenforceable because it did not impose mutual obligations "is meritless. Arbitration provisions need not require both parties to arbitrate their claims, so long as the contract as a whole imposes mutual obligations on both parties."); *Pennington v. Northrop Grumman Space & Mission Sys. Corp.*, 269 Fed.Appx. 812, 820 (10th Cir. 2008) ("In the employment context, a reciprocal agreement to arbitrate can provide the requisite consideration so long as the employer does not retain the unilateral authority to terminate or modify the arbitration agreement once the employee's claim has accrued.").

Another long-time tenet of Arizona contract law is "the general rule that there must be mutuality of obligation to constitute a binding contract[.]" *Gates v. Arizona Brewing Co.* 54 Ariz. 266, 95 P.2d 49 (Ariz. 1939). "Mutuality of obligation is a requirement for a

valid contract; however, mutuality is absent when only one of the contracting parties is bound to perform." *Carroll v. Lee*, 148 Ariz. 10, 13, 712 P.2d 923, 926 (Ariz. 1986). "Parties are, within reason, free to contract as they please, and to make bargains which place one party at a disadvantage; but a contract must have mutuality of obligation, and an agreement which permits one party to withdraw at his pleasure is void." *Shattuck v. Precision Toyota, Inc.*, 115 Ariz. 586, 588, 566 P.2d 1332, 1334 (Az.Ct.App. 1977) (citation omitted).

While numerous District of Arizona judges have addressed this issue, *Cheesecake Factory, Inc.*, 2009 WL 1259359, at * 4[7]; *Jones v. General Motors Corp.*, 640 F.Supp.2d 1124, 1131-1132 (D.Ariz. 2009); *Brady v. Universal Technical Institute of Arizona, Inc.*, 2009 WL 5128577 at * 2; *Wernett*, 2009 WL 1955612 at 8, the parties have not cited, and the Court's independent research has not discovered, a State of Arizona case that squarely addresses whether there must be a mutual obligation to arbitrate in the context of claim of substantive unconscionability in an employer-employee relationship.

Plaintiffs' authorities - *Nagrampa*, *Davis,* and *Armendariz* - follow California, not Arizona, law and therefore, are neither controlling nor persuasive. However, "[t]he Arizona Supreme Court has repeatedly stated that the Restatement of Law will be followed in the absence of a controlling statute or precedent." *Stevens/Leinweber/Sullens, Inc. v. Holm Dev. and Management, Inc.*, 165 Ariz. 25, 28, 795 P.2d 1308, 1311 (Az.Ct.App. 1990) (citing *e.g.*, *Bank of America v. J. & S. Auto Repairs*, 143 Ariz. 416, 418, 694 P.2d 246, 248 (Ariz. 1985)); *Keck v. Jackson*, 122 Ariz. 114, 115, 593 P.2d 668, 669 (Ariz. 1979). Thus, the Court need not determine whether there was mutuality of obligation to arbitrate, even

---

[7] In this case, the District Judge found it was not necessary to determine whether the arbitration agreement was mutually binding because it was part of an at-will employment contract with plaintiff pursuant to Arizona law, citing, among others, *Wagner v. City of Globe*, 150 Ariz. 82, 722 P.2d 250, 253 (Ariz. 1986) and *Gates v. Arizona Brewing Co.*, 54 Ariz. 266, 95 P.2d 49, 52 (Ariz. 1939) ("mutual promises are not essential where a sufficient consideration is otherwise present").

though the evidence supports the conclusion that there was,[8] because the Court has previously determined herein that consideration exists to support Dawson's arbitration agreement, which "vitiates the need for . . . mutuality." *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (Az.Ct.App. 1983) (adopting the Restatement (Second) of Contracts § 79[9] which provides that mutuality of obligation is irrelevant in the presence of consideration).

Considering that both federal and "Arizona law favor[] arbitration, both statutorily, see A.R.S. § 12-1501, and by the courts as a matter of public policy[,]" *Foy v. Thorp*, 186 Ariz. 151, 153, 920 P.2d 31, 33 (Az.Ct.App. 1996), the Court concludes that Plaintiffs' argument that the parties' arbitration agreement is substantively unconscionable and void for lack of mutuality is without merit.

---

[8] *See*, *Gilmer*, 500 U.S. at 23 (Supreme Court concluded that a provision requiring the arbitration of "any dispute, claim or controversy" arising between the plaintiff and his employer arising out of the employment required the arbitration of the plaintiff's federal age discrimination claim); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628-29 (1985) (Supreme Court concluded that a provision requiring the arbitration of "all disputes, controversies, or differences which may arise between [the parties] out of or in relation to" the parties' contract was broad enough to require the arbitration of a federal antitrust claim.); *Simula*, 175 F.3d at 720 (Ninth Circuit liberally construed arbitration provision that required arbitration of "[a]ll disputes arising in connection with" the parties' contract.).

[9] The Restatement (Second) of Contracts § 79 (1981) provides:

If the requirement of consideration is met, there is *no* additional requirement of
    (a) a gain, advantage, or benefit to the promisor or a loss, disadvantage, or detriment to the promisee; or
    (b) equivalence in the values exchanged; or
    (c) *mutuality of obligation*.

Restatement (Second) of Contracts § 79 (1981) (emphasis added).

**b. No Method or Procedure of Arbitration Provided**

Plaintiffs further argue that the arbitration agreement is substantively unconscionable because no method or procedure for arbitration is included in the arbitration agreement. (Doc. 28 at 11) Plaintiffs claim that "[w]here the arbitration agreement or clause simply refers to some unspecified 'policy' or 'procedure' and does not contain the exact arbitration procedures, and the employee is not provided with a copy or the means to immediately look at a copy before signing, then there has been no assent to the arbitration clause, and hence no agreement to arbitrate (no acceptance under common law of contracts)." (*Id.*) Relying on a Ninth Circuit case following Washington law and *Weatherguard Roofing Co., Inc. v. D.R. Ward Const. Co., Inc.*, 214 Ariz. 344, 346, 152 P.3d 1227, 1229 (Az.Ct.App. 2007), Plaintiffs repeat their earlier argument that the arbitration agreement is unconscionable because Plaintiffs were not given an opportunity to read the employee manual or provided a copy of the Grievance, Arbitration and Termination Dispute Resolution Policy referred to in the employee manual, "which *might* have contained an arbitration procedure." (Doc. 28 at 11) (emphasis added).

Defendants disagree, contending that because the Court is authorized under section 5 of the FAA[10] "to appoint the arbitrator in this case, the lack of specificity with respect to the arbitrator selection procedures does not render the parties' arbitration

_____

[10] Title 9 U.S.C. § 5, entitled "Appointment of arbitrators or umpire", provides in relevant part:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

Title 9 U.S.C. § 5.

agreement substantively unconscionable."[11] (Doc. 29 at 10) While the Court finds that the plain language of section 5 of the FAA does not support Defendants' argument in this regard, Plaintiffs' argument is nevertheless unavailing.

Neither side has provided any Arizona authority that directly holds that when an employer does not provide an employee a copy of the arbitration rules and procedures at the time the employee signs an arbitration agreement that Arizona law would deem the arbitration agreement or employer's arbitration policy substantively unconscionable. Even California's pro-employee law in the arbitration arena[12] has rejected a similar argument that an employer's mere reference to unattached arbitration rules renders an arbitration agreement unconscionable *per se*. *Mathis v. Screen Actors Guild Producer Pension Health Plan*, 2011 WL 199002, * 6 (Cal.App. 2 Dist. January 24, 2011) ("We find no authority supporting the argument and [the employee] cites to none."). Similarly, Arizona law would appear to reject such an argument. Plaintiffs' own cited authority, *Weatherguard*, found that a subcontract's incorporation by reference of general construction contract documents which included an arbitration clause was valid and enforceable on the subcontractor. 214 Ariz. at 347, 152 P.3d at 1230. "[W]hether the general conditions were attached to the subcontract is irrelevant . . . , 'physical attachment is not necessary if the document . . . is clearly and unambiguously incorporated by reference.'" *Id.* (quoting *United California Bank v. Prudential Ins. Co. of America*, 140 Ariz. 238, 268, 681 P.2d 390, 420 (Az.Ct.App. 1983)). Dawson's employee manual clearly indicates where the arbitration rules and procedures may be found upon request which plainly make clear they are a part of Dawson's arbitration policy: "For

---

[11] The Court notes that A.R.S. § 12-1503 is very similar to 9 U.S.C. § 5.

[12] For example, in California, a contract to arbitrate disputes between an employer and an employee raises a rebuttable presumption of substantive unconscionability. *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1174 (9th Cir. 2003).

complete, detailed copy of the Grievance, Arbitration and Termination Dispute Resolution Policy, please contact the Human Resources Department." (Doc. 24-1, Exh. 1, § 6 at p. 44)

As previously mentioned, "[s]ubstantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell*, 184 Ariz. at 89, 907 P.2d at 58 (citation omitted). Factors showing substantive unconscionability include "contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.*; *Nelson v. Rice*, 198 Ariz. at 567, 12 P.3d at 242. There is no evidence that Dawson intentionally hid the arbitration terms and procedures from Plaintiffs or that Plaintiffs ever contacted Dawson's Human Resources Department to obtain a copy of the arbitration rules. "[T]he Arbitration Agreement's failure to specify what arbitration rules will apply and where arbitration proceedings will be held does not evidence an attempt to conceal terms that will be unfair to [Plaintiffs]." *Cheesecake Factory*, 2009 WL 1259359 at * 3. An arbitration clause should not be struck down as unconscionable merely because Plaintiffs' counsel speculates, with no supporting facts of any kind, that the arbitration rules themselves are not fair and are so one-sided to be oppressive to Plaintiffs. Plaintiffs' argument that because Dawson did not provide each Plaintiff a copy of the arbitration rules and procedures at their orientation renders the arbitration agreement substantively unconscionable is rejected because they were sufficiently incorporated by Dawson's employee manual.

### c. No Express Allocation of Arbitration Expenses

Finally, Plaintiffs contend that the arbitration agreement is substantively unconscionable "because it is silent on how arbitration fees will be allocated between the parties, and therefore the arbitration fees and costs awarded against plaintiffs could be prohibitive to plaintiffs who are indigent." (Doc. 28 at 12) Defendants counter with citations to several District of Arizona cases that "have found that an arbitration clause is not substantively unconscionable where it does not provide for an allocation of arbitration costs,

if a party or its counsel states on the record that such a party will pay for the arbitration costs[,]" citing *Cheesecake Factory*, 2009 WL 1259359 at * 3; *Autonation*, 2011 WL 380517 at * 1 ("Plaintiff has not met her burden [of showing likelihood of incurring prohibitively expensive arbitration costs] given Defendants' repeated and unequivocal offers to pay all arbitration fees and costs."). (Doc. 29 at 10)  Defendants point to the Affidavit of David Lunt, Dawson's Vice President of Administration, that avers that, "if the Court finds that Plaintiffs' claims are subject to arbitration, Dawson will pay for all arbitration costs and fees, other than Plaintiffs' attorneys' fees. (*Id.*, citing Lunt's Affidavit, doc. 29-1, Exh 1 at ¶ 4). "Therefore, Plaintiffs' inability to afford the arbitration costs is no longer relevant to their claim that the arbitration agreement is unenforceable." (*Id.*)

Where "a party seeks to invalidate an arbitration agreement on the grounds that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 92 (2000). In *Harrington*, the Arizona Court of Appeals rejected the argument that an arbitration clause was substantively unconscionable because the party seeking to avoid arbitration had failed to present "individualized evidence to establish that the costs of arbitration [were] prohibitive." 211 Ariz. at 252, 119 P.3d at 1055. The Arizona court so held even though several of the parties seeking to avoid arbitration had submitted affidavits providing that they could not afford the costs of arbitration, reasoning that "the allegation that the arbitration clause is substantively unconscionable on this record is speculative at best." *Id.*, 211 Ariz. at 253, 119 P.3d at 1056.

Plaintiffs have not shown that any arbitration costs or fees will be incurred, let alone prohibitively expensive ones. They do not demonstrate that arbitration will put them in any worse position than litigation in allowing them to pursue their claims, especially now that Dawson has unequivocally agreed to pay for all arbitration costs and fees, other than the fees for Plaintiffs' attorneys who are representing Plaintiffs on a contingency fee basis. Plaintiffs' argument that the arbitration agreement is substantively unconscionable because

it is silent on how arbitration fees will be allocated between the parties is without merit.

Based on the foregoing,

**IT IS ORDERED** as follows:

1. Defendants' Motion to Dismiss Case And/Or Stay Proceedings and Compel Arbitration, doc. 24, is **GRANTED** in part and **DENIED** in part.

2. The parties are directed to promptly submit this matter to arbitration consistent with Dawson's arbitration rules and procedures, the provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*., and this order.

3. Upon completion of the arbitration proceedings and absent a voluntary settlement of all claims, the parties must comply with the provisions of 9 U.S.C. §§ 9-13, as applicable.

4. This action is **STAYED** pursuant to 9 U.S.C. § 3 until further order of the Court so that neither party must pay a second $350.00 filing fee to have the arbitration award confirmed.

5. The parties shall file a Joint Status Report concerning the status of the arbitration on or before **Friday, January 6, 2012**. It is the responsibility of Plaintiffs to initiate arbitration, prosecute their claims to a conclusion **within nine (9) months** of this order, and prepare and file a Joint Status Report or this case may be dismissed without prejudice absent a showing of good cause and the exercise of due diligence. Defendants shall cooperate with Plaintiffs' efforts to comply their obligations imposed herein.

6. Plaintiffs' request for oral argument is **DENIED**.

Dated this 4th day of October, 2011.

Lawrence O. Anderson
United States Magistrate Judge

- 34 -